**VENTURE ASSOCIATES CORP.,**
a Tennessee corporation,
Plaintiff,

v.

**ZENITH DATA SYSTEMS COR-
PORATION, a Delaware cor-
poration, Defendant.**

No. 92 C 978.

United States District Court,
N.D. Illinois,
Eastern Division.

March 27, 1995.

Donald L. Johnson, Johnson Law Firm, Leo G. Aubel, Aubel & Aubel, P.C., Tobin Marais Richter, Chicago, IL, for Venture Associates Corp., a Tenn. corp.

Thomas Francis Bush, Jr., Saunders & Monroe, Chicago, IL, Craig A. Newman, Michael D. Schissel, Arnold & Porter, New York City, for Zenith Data Systems Corp., a Del. corp.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Venture Associates Corporation ("Venture") originally brought this action against Zenith Data Systems Corporation ("Zenith") for breach of contract, but on remand from the Seventh Circuit we are left with only a claim that Zenith breached a preliminary agreement to bargain in good faith. Presently before us is Zenith's motion for summary judgment on the issue of damages. For the reasons set forth above, defendant's motion is granted in part and denied in part.

### I.  Background [1]

This case arises out of a business transaction gone awry. Beginning in 1991, Zenith began negotiating to sell the Heath Company ("Heath"), one of its subsidiaries which had not turned a profit for several years, to Venture. On March 31, 1991, Venture sent to Zenith's broker, Financiere Indosuez, a letter of intent outlining Venture's proposal to purchase the company for a total of $11 million. In addition to substantive terms, such as the nature of Venture's financing and warranties, the letter contained the following statement:

If the forgoing is acceptable to Seller, Seller should sign and return the enclosed copy of this letter. It is understood that this is merely a letter of intent subject to the execution by Seller and Buyer of a definitive Purchase Agreement (except for the following paragraph of this letter, which shall be binding upon and inure to the benefit of each of us and our respective successors and assigns) [and] does not constitute a binding obligation on either of us.

However, notwithstanding the foregoing, this letter is intended to evidence the preliminary understanding which we have reached regarding the proposed transaction and our mutual intent to negotiate in good faith to enter into a definitive Purchase agreement....

Richter Affidavit, Exb. 4. Although Zenith did not sign and return the letter, it responded by mail on June 11, 1991, stating that it would begin negotiating the sale of Heath according to the terms and conditions of the March 31 letter. This proposal was accepted by Venture the following day.

In subsequent negotiations, however, the parties encountered substantial difficulties. Zenith demanded a post-closing adjustment of up to $4 million in the purchase price, as well as financial guarantees by Venture. These terms proved unacceptable to Venture, and the two parties never executed a final purchase agreement. Venture then filed this diversity action, alleging that Zenith breached an agreement to sell Heath by interjecting these terms at the last minute.

We dismissed plaintiff's original complaint on the ground that no final binding agreement had been reached by the parties. *Venture Associates Corp. v. Zenith Data Systems Corp.*, 812 F.Supp. 788 (N.D.Ill.1992). On appeal the Seventh Circuit affirmed our dismissal of the breach of contract claim, but held that Venture had sufficiently pleaded a cause of action for breach of a preliminary agreement to negotiate in good faith. *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429 (7th Cir.1993). Since the Court of Appeals remanded this case back to us, we have denied Zenith's

---

1.  We assume familiarity with this case, and reiterate here only those facts necessary for our disposition of the instant motion.

motion for summary judgment on the issue of whether it is liable for breach of the preliminary agreement, finding that material facts remained in dispute. *Venture Associates Corp. v. Zenith Data Systems Corp.*, No. 92 C 978, 1994 WL 71430 (N.D.Ill. March 4, 1994). Although the pretrial order has been filed, we are now faced with the instant summary judgment motion on the question of damages.

## II.  Summary Judgment Standard

A motion for summary judgment will be granted if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Once the moving party has met this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(c); *see Maxwell v. City of Indianapolis*, 998 F.2d 431, 433 (7th Cir.1993). In deciding a motion for summary judgment, the facts must be read in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## III.  Discussion [2]

Defendant contends that even if it is found liable, Venture is only entitled to recover the out-of-pocket expenses it paid in reliance on Zenith's promise to bargain in good faith. Zenith argues that because Venture is suing on a preliminary agreement, rather than a final purchase agreement, its recovery is limited to reliance damages. Defendant also maintains that Venture's claim for the profits it could have made had the transaction been completed is too speculative. Plaintiff responds that Illinois law does not restrict its recovery simply to reliance damages, but also allows it to recover the benefit of its lost bargain. Venture also argues that so long as lost profits can be calculated with reasonable certainty, and were contemplated by the parties, they are recoverable under Illinois law. Therefore, Venture claims, its experts should be allowed to tell the jury how profitable Heath would have been had the sale gone through and the company been turned around.

■ We first address defendant's contention that only reliance damages are recoverable when a party breaches its duty to negotiate in good faith.[3] In resolving this dispute we begin with the letter of intent acknowledged by Zenith, since the scope and nature of any duty to negotiate in good faith is determined in the first instance by the language of the letter of intent itself. *A/S Apothekernes Laboratorium*, 873 F.2d at 158; *Bercoon, Weiner, Glick & Brook v. Manufacturers Hanover Trust Co.*, 818 F.Supp. 1152, 1157 (N.D.Ill.1993). For example, a letter of intent may simply require the seller to limit its negotiations to a single potential buyer until the two parties disagree, *see Feldman v. Allegheny Intern., Inc.*, 850 F.2d 1217, 1219 (7th Cir.1988), or may obligate the seller to take the property off the market during negotiations. *See Channel Home Centers*, 795 F.2d at 299–300. A letter of intent could also specify the damages that must be paid by the party breaching the agreement. In the instant case the March 31 letter outlined the general frame-

---

**2.** The parties do not dispute that Illinois law provides the rules of decision in this diversity action.

**3.** At the outset, we note that Venture no longer has a breach of contract claim against Zenith, as our dismissal of that claim was affirmed by the Seventh Circuit. Venture's only viable claim is that Zenith breached its obligation to bargain in good faith, an obligation it undertook by indicating its desire to proceed under the framework outlined in Venture's March 31 letter. To be

sure, even if a final agreement is never executed between two negotiating parties, letters of intent exchanged between them may indicate a preliminary agreement to bargain in good faith. *See A/S Apothekernes Laboratorium v. I.M.C. Chemical Group, Inc.*, 873 F.2d 155, 158–60 (7th Cir.1989); *Channel Home Centers v. Grossman*, 795 F.2d 291, 299 (3d Cir.1986); *Teachers Ins. & Annuity Ass'n v. Tribune Co.*, 670 F.Supp. 491, 498–99 (S.D.N.Y.1987).

work for continued negotiations between Venture and Zenith. However, the letter did not address the issue of damages should one of the parties fail to bargain in good faith.[4] Therefore, we must determine whether the parties contemplated the sort of damages that Venture alleges it sustained.

Venture claims that it should be allowed to recover what it would have reaped had a purchase agreement with Zenith been completed. Under Venture's theory, damages would be calculated on the assumption that if the parties bargained in good faith, they would have reached an agreement, Venture would have obtained Heath at a beneficial price, it would have made the company profitable, and it would have sold Heath for a profit. By asking for these damages, Venture seeks to bootstrap its claim that Zenith breached the letter of intent into a claim that Zenith violated a purchase agreement. However, the duties imposed by a preliminary agreement to bargain in good faith differ from the duties imposed by a final purchase agreement.

> A duty to *negotiate* in good faith does not encompass an automatic duty to approve the final deal. A letter of intent is no guarantee that the final contract will be concluded, even if the parties fulfill their good faith obligations. *Teachers Insurance*, 670 F.Supp. at 498.

*A/S Apothekernes Laboratorium*, 873 F.2d at 159 (emphasis in original). Moreover, because the parties never executed a final purchase agreement, Venture cannot use that "agreement" as a basis for holding Zenith liable. *See Goodstein Const. Corp. v. City of New York*, 80 N.Y.2d 366, 590 N.Y.S.2d 425, 428–29, 604 N.E.2d 1356, 1360 (1992) (applying New York law). This point appears to have been lost on Venture; indeed, many of the cases cited in its brief deal with the breach of an actual contract for the sale of goods or property, rather than a preliminary

agreement to negotiate in good faith. *See, e.g., Heritage Commons Partners v. Village of Summit*, 935 F.2d 1489, 1495–96 (7th Cir. 1991) (rejecting defendant's contention that only reliance damages could be recovered for breach of land development contract).[5]

■ Venture also relies on cases allowing for the recovery of consequential damages where a defendant fails to undertake good faith efforts to perform its obligations under a contract. However, "[g]ood faith in the bargaining or formation stages of the contracting process is distinguishable from the common law duty to perform in good faith." *Channel Home Centers*, 795 F.2d at 299 n. 8. While breach of the later may support a claim for contract damages, *see Milex Products, Inc. v. Alra Labs., Inc.*, 237 Ill.App.3d 177, 177 Ill.Dec. 852, 860–61, 603 N.E.2d 1226, 1234–35 (1992), *app. denied*, 149 Ill.2d 651, 183 Ill.Dec. 863, 612 N.E.2d 515 (1993), breach of the former cannot sustain a claim that a contract was violated, since no final agreement was ever reached. *See A/S Apothekernes Laboratorium*, 873 F.2d at 159–60 & n. 2 (plaintiff could not rely on rule of contract construction where binding contract never existed). As we have dismissed plaintiff's breach of contract claim, Venture cannot rely on these cases to support its claim for contract damages.

Notwithstanding these problems, the case law does not necessarily limit Venture to reliance damages. To be sure, permitting the recovery of reliance damages comports with the rationale of the duty to negotiate in good faith, since recognizing preliminary commitments of this sort allows "borrowers and lenders to make plans in *reliance* upon their preliminary agreements and present market conditions. Without such legal recognition, parties would be obliged to expend enormous sums negotiating every detail of final contract documentation before knowing whether they have an agreement, and if so,

---

**4.** Zenith points to the portion of the letter that requires each party to bear its own costs if no agreement is reached, yet this does not apply to the present dispute since Zenith is accused of breaching its obligation under the letter of intent.

**5.** Venture chides Zenith for not citing *Heritage Commons Partners,* suggesting that the failure to do so was a violation of its ethical obligation to

alert us to adverse authority in the controlling jurisdiction. However, given that *Heritage Commons Partners* is inapplicable to the issues presented in this case, we suggest that next time Venture spend more time analyzing the cases it relies upon and less time criticizing the conduct of its opponents.

on what terms." *Teachers Ins. & Annuity Ass'n*, 670 F.Supp. at 499 (emphasis supplied); *see also Arcadian Phosphates, Inc. v. Arcadian Corp*, 884 F.2d 69, 74 n. 2 (2d Cir.1989) (out-of-pocket expenses are most appropriate where "alleged failure to bargain in good faith is not a but-for cause of [plaintiff's] lost profits"). However, where a preliminary agreement exists between two negotiating parties, one of them cannot act in bad faith to kill an impeding deal. Thus, "a party might breach its obligation to bargain in good faith by unreasonably insisting on a condition outside the scope of the parties' preliminary agreement, especially where such insistence is a thinly disguised pretext for scotching the deal because of unfavorable change in market conditions." *A/S Apothekernes Laboratorium*, 873 F.2d at 158. In such a situation it would not make sense to limit the plaintiff to reliance damages if he could prove that, absent the defendant's bad faith in negotiation, the parties would have reached an agreement. *See Teachers Ins. & Annuity Ass'n v. Ormesa Geothermal*, 791 F.Supp. 401, 415 (S.D.N.Y.1991) (applying New York law). Rather, if Venture can prove that it would have reached an agreement with Zenith for the sale of Heath, and that the agreement was precluded solely because of Zenith's improper conduct, Venture is entitled to be placed in the position it would have been in had Zenith acted in good faith—that is, Venture should be able to recover the difference between the $11 million sale price agreed to in the letter of intent, and the market value of Heath at the time of the breach. *See Collins v. Reynard*, 154 Ill.2d 48, 180 Ill.Dec. 672, 673, 607 N.E.2d 1185, 1186 (1992) ("The basic principle for the measurement of contract damages is that the injured party is entitled to recover the amount that will put him in as good a position as he would have been in had the contract been performed as agreed."). If, on the other hand, Venture cannot prove that a contract would have been formed had both sides met their obligations to deal in good faith, then it would be limited to reliance damages, since that would be the only loss caused by Zenith's failure to act in good faith. *See Arcadian Phosphates, Inc.*, 884 F.2d at 74 n. 2.

■ We next address the more difficult question of whether, if Venture proves that it would have consummated the deal absent Zenith's bad faith, it can recover the profits it claims it would have reaped from the turn around and eventual sale of Heath at an initial public offering ("IPO"). Under Illinois law, lost profits are recoverable if they can be proven with a reasonable degree of certainty and were within the reasonable contemplation of the parties at the time the contract was entered into. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill.2d 306, 113 Ill.Dec. 252, 257, 515 N.E.2d 61, 66 (1987); *Hentze v. Unverfehrt*, 237 Ill. App.3d 606, 178 Ill.Dec. 280, 284, 604 N.E.2d 536, 540 (1992). Defendant contends that plaintiff's plan to turn around Heath within two years and sell the company at an IPO contained too many contingencies to support a claim for lost profits. *See Bachewicz v. American Nat. Bank & Trust Co.*, 126 Ill. App.3d 298, 81 Ill.Dec. 294, 307–08, 466 N.E.2d 1096, 1109–10 (1984) (finding profits on proposed resale of condominiums that were not yet converted or under contract too speculative to be recovered), *rev'd on other grounds*, 111 Ill.2d 444, 95 Ill.Dec. 827, 490 N.E.2d 680 (1986). Plaintiff responds that it can introduce expert testimony to support its contention that Heath could have been turned into a profitable operation and sold at a later IPO for at least $36 million.

■ With regard to Heath's future profitability, we believe that evidence of the company's financial position both before and after 1991, along with evidence of Venture's plan to turn it around, would be adequate to allow a jury to determine such damages with sufficient certainty. *See Oak Brook Hotel v. Teachers Ins. & Annuity Ass'n*, 846 F.Supp. 634, 640 (N.D.Ill.1994) (applying New York law). Nor can Zenith claim that Heath's future performance was not reasonably contemplated by the parties, as this was the primary motivation behind the actions of both the seller and the buyer. Thus, Venture is entitled to present evidence of Heath's profitability had an agreement been reached.

However, Venture cannot recover the money it contends it would have made on the eventual sale of Heath at an IPO. Although it claims it can introduce expert testimony as to the value of the company at an IPO in 1995, it cannot avoid the fact that no firm buyer or investor had been obtained as of 1991. *See Bachewicz*, 81 Ill.Dec. at 307, 466 N.E.2d at 1109 (denying recovery of lost profits which were "contingent on both the conversion and the ultimate sale of the units"). Nor does plaintiff have a past track record of bringing companies public from which the jury could evaluate the chances of success. *Cf. Drs. Sellke & Conlon, Ltd. v. Twin Oaks Realty, Inc.*, 143 Ill.App.3d 168, 96 Ill.Dec. 633, 638, 491 N.E.2d 912, 917 (1986) (new business could not demonstrate lost profits with certainty). While plaintiff may recover the profits it believes Heath would have generated, absent some indication that an investor would have agreed in 1991 to take the company public, Venture cannot recover what it believes the company would have sold for in the future. Moreover, Venture has not demonstrated that the sale of Heath at an IPO was within the reasonable contemplation of both parties in 1991. *See Spangler v. Holthusen*, 61 Ill.App.3d 74, 18 Ill.Dec. 840, 378 N.E.2d 304 (1978) (land developer could not recover from seller lost profits on future sales agreement which seller did not know of). In sum, Venture's claim for the profit it would have made on the eventual sale of Heath at an IPO is not recoverable under Illinois law, and therefore we grant Zenith's motion for summary judgment as to that particular element of Venture's damage claim.

## IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment as to the damage portion of plaintiff's claim is granted in part and denied in part. It is so ordered.